IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JOSEPH CUELLAR,
        Plaintiff,

-vs-

DETECTIVE OTHO DUBOISE,
        Defendant.

CAUSE NO.:
AU-17-CA-00223-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Detective Otho Duboise's Motion for Summary Judgment [#36], Plaintiff Joseph Cuellar's Response [#40] in opposition,[1] and Detective Duboise's Reply [#42] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court now issues the following opinion and orders.

### Background

This is an excessive force case. On February 14, 2015, Joseph Cuellar spent a Saturday night drinking on Sixth Street in Austin, Texas. Resp. [#40] at 2. When the bars began to close, Cuellar and a friend, Ricardo Guerrero, began walking down Sixth Street to catch a bus back to San Marcos, Texas, where Cuellar was enrolled as a student at Texas State University. *Id.* Because it was a weekend night, Sixth Street was, as usual, closed to vehicular traffic and crowded with intoxicated revelers. *Id.* As he made his way through the crowd, an ebullient Cuellar intermittently broke out into a rave-like dance wherein he circled his hands around each other at chest level and did a little jig. Resp. [#40-1] Ex. A at 10–11, 18.

---

[1] The Court GRANTS Cuellar's Motion for Leave to File Exhibits to Response Under Seal [#41].

While walking and dancing down the street, Cuellar and Guerrero encountered a phalanx of horse-mounted police officers performing crowd-control services. *Id.* at 3. The parties dispute whether Cuellar "head[ed] straight towards the mounted patrol horses" or whether the horses instead "encroached upon" and "startled" Cuellar. *Compare* Mot. Summ. J. [#36] at 2, *with* Resp. [#40] at 3. It is undisputed, however, that Cuellar found a large horse blocking his way as he proceeded down Sixth Street. Mot. Summ. J. [#36-1] Ex. A at 15.[2] Cuellar did not immediately notice the horse, and when he did finally notice, it startled him. Cuellar reacted by exclaiming "Hey, what's up man." Resp. [#40] at 16, 18–19.

Officer Amanda Santeford was riding the horse in question and testified in her deposition that she heard Cuellar say something to Guerrero about wanting to "smack[] that ass." Mot. Summ. J. [#36] at 3; Mot. Leave Seal [#37-1] Ex. B (Santeford Dep.) at 5. Santeford took this to mean Cuellar wished to hit her horse, while Cuellar denies making the comment altogether. Santeford Dep. at 5; Resp. [#40-1] Ex. A at 21. Officer Santeford also testified that Cuellar was either "dancing or motioning like he was going to hit the horse." Santeford Dep. at 6. By this point, Cuellar had somehow ended up directly behind the horse, and Officer Santeford was concerned the horse might kick him. *Id.* at 7. She therefore instructed Cuellar to back away from the horse. Resp. [#40] at 3; Santeford Dep. at 6. Cuellar acceded to this request and danced his way backwards as Officer Santeford rejoined the phalanx of mounted officers proceeding down Sixth Street. Mot. Summ. J. [#36] at 3; Santeford Dep. at 6.

Detective Otho Duboise, who was on foot patrol on Sixth Street, observed this initial encounter between Officer Santeford and Cuellar and made his way towards the mounted patrol. Mot. Leave Seal [#37-1] Ex. C (Duboise Dep.) at 15, 17. As Detective Duboise approached,

---

[2] In the interest of consistency and for ease of reference, all page number citations refer to CM/ECF pagination.

2

Cuellar danced back towards Officer Santeford's horse. *Id.* at 17–18; Resp. [#40-1] Ex. A at 27. Sergeant Duboise testified that when Cuellar was about one to three yards behind the horse, Cuellar raised his right arm as if he was "fixing to slap the horse on the rear." Duboise Dep. at 19. Cuellar denies raising his arms or making any sort of aggressive move towards the horse. Resp. [#40-1] Ex. A at 27. He did, however, continue to move his hands in a circular dancing motion near his chest. *Id.*

Detective Duboise testified that he positioned himself between Cuellar and the horse and grabbed ahold of Cueller's right arm and body. Duboise Dep. at 19. Cuellar was still one to three yards away from the horse. Resp. [#40-1] Ex. A at 28. After interposing himself between Cuellar and the horse, Detective Duboise then swung Cuellar around by the arm and threw him onto the ground. Duboise Dep. at 19; Mot. Summ. J. [#36-4] Ex. D (Bystander Video); Resp. [#40-1] Ex. A at 29–30.[3] This use of force was captured on video by a bystander with a cellphone. Bystander Video. As a result of the use of force, Cuellar suffered bruising and scrapes on his hips, hands, and wrists. Mot. Summ. J. [#36] at 6. Detective Duboise subsequently arrested Cuellar for public intoxication, though the criminal charge was later dismissed. Resp. [#40] at 4; Mot. Summ. J. [#36-1] Ex. A at 30.

In March 2017, Cuellar brought this action under 42 U.S.C. § 1983 alleging Detective Duboise used excessive force when he threw Cuellar to the ground. Notice Removal [#1-4] Original Pet. at 1. Detective Duboise now brings a motion for summary judgment arguing he is entitled to qualified immunity. Mot. Summ. J. [#36]. This pending motion is ripe for review.

---

[3] In his initial report, Detective Duboise alleged that he told Cuellar to get back and then pushed Cuellar away from the horse. Mot. Leave [#41-5] Ex. H (Incident Report) at 2. The Initial Report also indicated Cuellar "stumbled" and fell to the ground, as opposed to being flung to the ground by Detective Duboise. *Id.*

3

## Analysis

### I. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Generally, this means the Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55. In excessive force cases, however, the Fifth Circuit "assign[s] greater weight" at the summary judgment stage to "facts evident from video recordings taken at the scene." *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012)

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party

opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Qualified Immunity

Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis involves two considerations: "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009). As applied in Fourth Amendment excessive force cases, "the second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Griggs v. Brewer*, 841 F.3d 308, 313 (5th Cir. 2016) (citation and quotation

marks omitted); *see also Saucier v. Katz*, 533 U.S. 194, 205 (2001) ("If the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense."). For purposes of determining whether a right is clearly established, courts should "not require a case directly on point," so long as existing precedent "place[s] the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff to negate the defense. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

Detective Duboise contends he is entitled to qualified immunity on Cuellar's excessive force claim as a matter of law because (1) there is no genuine issue of material fact as to whether Detective Duboise used excessive force against Cuellar in contravention of the Fourth Amendment; and (2) even if Detective Duboise arguably used excessive force, he is nevertheless entitled to qualified immunity because his actions were objectively reasonable under clearly established law. The Court assesses each of these arguments in turn.

### A. Constitutional Violation

The Fourth Amendment confers a right to be free from excessive force during an arrest. *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009). To establish a claim of excessive force under the Fourth Amendment, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir. 2016) (citation and internal quotation marks omitted).

"Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville*, 567 F.3d at 167 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Guiding this

6

inquiry, the Supreme Court has identified three sets of facts which deserve careful consideration in determining whether the force used is "excessive" or "unreasonable": (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *see also Griggs*, 841 F.3d at 313–14 ("A court must measure the force used under the facts as a reasonable person would perceive them, not necessarily against the historical facts."); *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (noting inquiries into whether force is clearly excessive and whether force is objectively unreasonable are "often intertwined").

Here, the Court concludes Cuellar has made out a Fourth Amendment excessive force claim because he has presented evidence suggesting (1) he suffered an injury resulting from Detective Duboise's use of force; and (2) the injury resulted directly and only from a use of force clearly excessive to the need and objectively unreasonable. *Cass*, 814 F.3d at 731.

First, Cuellar suffered an injury. Cuellar testified that in his deposition that he suffered scrapes and bruises on his hip and hands as a result of being thrown to the ground by Detective Duboise. Mot. Summ. J. [#36-1] at 24–25. Cuellar later sought treatment nine days after the incident for continued soreness in his hip. *Id.*

Second, these injuries resulted directly and only from Detective Duboise's use of force, and there is a genuine dispute of material fact as to whether this use of force was clearly excessive and objectively unreasonable. The bruises and scrapes complained of by Cuellar occurred when Detective Duboise threw Cuellar to the ground. *Id.* In assessing whether this use of force was clearly excessive and objectively unreasonable, the Court applies the *Graham* factors.

7

The first *Graham* factor—the severity of the crime at issue—counsels against the use of force. Cuellar was charged with public intoxication, a Class C misdemeanor. Resp. [#40] at 10; TEX. PENAL CODE § 49.02(c). This is a minor offense militating against the use of force. *Trammel v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017). Detective Duboise argues Cuellar could have been charged with the "much more severe" crime of interference with a police service animal, though it is unclear why Detective Duboise believes this crime to be "much more severe." Mot. Summ. J. [#36] at 11; TEX. PENAL CODE § 38.151. As applied here, Cuellar's alleged interference with Officer Santeford's horse might arguably have constituted either a Class A or Class C misdemeanor. TEX. PENAL CODE § 38.151(c). Both Class A and Class C misdemeanors are minor offenses militating against use of force. *See, e.g., Trammel*, 868 F.3d at 340 (noting Class C misdemeanors qualify as minor offenses); *Jimenez v. Wood Cty., Tex.*, 660 F.3d 841, 848 (5th Cir. 2011) (en banc) (concluding Class A misdemeanor constituted minor offense for Fourth Amendment purposes).

The second *Graham* factor—whether Cuellar posed an immediate threat to the officers or to others—also counsels in favor of a minimal use of force. Upon reaching Cuellar, Detective Duboise claims to have immediately interposed himself between Cuellar and the horse and grabbed Cuellar's right arm and hip. Duboise Dep. at 19.[4] Cuellar was still one to three yards away from the horse at this time. Resp. [#40-1] Ex. A at 28. Thus, there was no risk of Cuellar actually striking the horse when Detective Duboise began to swing Cuellar around "basically 360 degrees" and throw him to the ground. Duboise Dep. at 19; Bystander Video. Though it is

---

[4] Arguably, the Bystander Video calls Detective Duboise's account into question. The video appears to show Detective Duboise approaching Cuellar from the right, grabbing Cuellar's right arm, and swinging Cuellar away from the horse and then violently towards the ground. Bystander Video. Detective Duboise does not appear to interpose himself between Cuellar and the horse before throwing Cuellar to the ground. *Id.* Further, both Cuellar and Detective Duboise appear to be further than three yards away from the horse—and thus arguably out of the zone of danger created by a potential horse kick—when Detective Duboise threw Cuellar to the ground. *Id.*

conceivable that the horse—possibly aggravated by Cuellar's earlier dancing—might have still kicked backwards even after Cuellar was restrained, "it is unclear whether a reasonable officer would have thought that [Cuellar] posed a danger to himself and others" solely on the basis of his presence behind the horse.[5] *Trammel*, 868 F.3d at 342. It is also unclear whether Detective Duboise and Cuellar were still within kicking distance of Officer Santeford's horse when Detective Duboise threw Cuellar to the ground. *See* Bystander Video. In these circumstances, a reasonable jury could conclude that a reasonable officer would not have believed Cuellar and Detective Duboise were still in danger when Detective Duboise threw Cuellar to the ground. A reasonable jury might similarly conclude that, under the facts as a reasonable officer would perceive them, Detective Duboise used force "excessive to the need" in removing Cuellar from behind the horse. *Cass*, 814 F.3d at 731.

The third *Graham* factor—whether Cuellar attempted to flee or evade arrest—also weighs against the use of force. It is uncontroverted that Cuellar attempted neither to flee nor to evade arrest. Detective Duboise argues, however, that Cuellar's prior disregard of Officer Santeford's command[6] to back away from her horse is tantamount to resisting arrest. Mot. Summ. J. [#36] at 15. The Court finds this argument unpersuasive and concludes a reasonable jury could determine Detective Duboise's use of force was clearly excessive and objectively unreasonable even in light of Cuellar's partial disregard of Officer Santeford's prior command.

---

[5] Indeed, the Bystander Video shows another person standing directly next to Cuellar and behind the horses as Detective Duboise grabbed Cuellar. Bystander Video. Though Detective Duboise argues he "saved" Cuellar by throwing him forcefully to the ground, there is no evidence Detective Duboise bothered to warn the other bystander that he was in danger of being kicked by a patrol horse. *Id.*; *see also* Mot. Summ. J. [#36] (arguing it "was imperative for Cuellar's own safety that he quickly be removed from [the horse's] backside in case [the horse] kicked").

[6] Detective Duboise did not issue any verbal orders or commands to Cuellar before resorting to use of force. Duboise Dep. at 19.

9

In sum, viewing the evidence in the light most favorable to Cuellar, genuine issues of material fact exist as to whether Detective Duboise used excessive force in contravention of the Fourth Amendment.[7] As a reasonable jury could determine Detective Duboise used force excessive to the need when he spun Cuellar around in a circle and then threw him to the ground, the Court concludes Cuellar has made out a Fourth Amendment excessive force claim.

**B.     Clearly Established Law**

Though the Court concludes Cuellar has made out a violation of a constitutional right, Detective Duboise might still be entitled to qualified immunity if his use of force was objectively reasonable in light of clearly established law. *See Griggs*, 841 F.3d at 313.

As discussed above, the objective reasonableness of Detective Duboise's use of force hinges upon whether a reasonable officer would have believed Cuellar posed a continuing danger to himself or others after he was initially seized by Detective Duboise. In turn, whether a reasonable officer would have believed Cuellar posed a continuing danger depends upon disputed issues of material fact, including Cuellar's distance from the horse upon being intercepted by Detective Duboise; his ability to strike the horse; whether a reasonable officer would have believed in the first place that Cuellar was, in fact, preparing to strike the horse; and the likelihood that a highly trained police horse would kick backwards at a dancing inebriate absent serious provocation.

If, depending on the resolution of these factual disputes, a reasonable officer would not have believe Cuellar posed a continuing danger to himself or those around him, then Detective

---

[7] Detective Duboise argues that regardless of whether he used excessive force, Cuellar has nevertheless failed to state a Fourth Amendment excessive force claim because Cuellar's injuries are *de minimis*. Mot. Summ. J. [#36] at 9–11. But because genuine issues of fact exist as to whether Detective Duboise used a objectively unreasonable force and because "*[a]ny* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold," the Court cannot conclude at this time that Cuellar's injuries were *de minimis*. *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (emphasis in original) (internal quotation marks and citation omitted).

Duboise's use of force was objectively unreasonable in light of clearly established law. *See Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) ("[I]n an obvious case, the *Graham* excessive force factors themselves can clearly establish" whether a use of force was objectively unreasonable in light of clearly established law, "even without a body of relevant case law." (internal quotation marks omitted) (citing *Broseau v. Haugen*, 543 U.S. 194, 199 (2004))); *see also Flores v. City of Palacios*, 381 F.3d 391, 399–400 (5th Cir. 2004) (concluding fact issue as to whether officer reasonably believed plaintiff posed a risk of harm to himself or others precluded summary judgment on qualified immunity defense). Accordingly, because the objective reasonableness of Detective Duboise's use of force depends on disputed issues of material fact, the Court denies summary judgment on Detective Duboise's qualified immunity defense at this time.

## Conclusion

The Court concludes genuine issues of material fact preclude ruling on Detective Duboise's qualified immunity defense at this time.

Accordingly,

IT IS ORDERED that Cuellar's Motion for Leave to File Exhibits to Response Under Seal [#41] is GRANTED; and

IT IS FURTHER ORDERED that Detective Duboise's Motion for Summary Judgment [#36] is DENIED.

SIGNED this the 11th day of October 2018.

/s/ Sam Sparks
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE